RECORD NO. 15-4118

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ARNOLD RUSSELL THREET,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THE HONORABLE CATHERINE C. BLAKE, Chief Dist. Judge

**OPENING BRIEF OF APPELLANT
ARNOLD RUSSELL THREET**

Andrew R. Szekely
LAW OFFICES OF
ANDREW R. SZEKELY, LLC
7474 Greenway Center Drive, Suite 150
Greenbelt, Maryland 20770
(301) 358-1048
andrew@aszekelylaw.com

*Counsel for Appellant*

# TABLE OF CONTENTS

Table of Authorities ...................................................................ii

Subject Matter and Appellate Jurisdiction ...............................1

Issue Presented...........................................................................1

Statement of the Case.................................................................1

Statement of Facts .....................................................................2

   I.  The Guilty Plea................................................................2

   II. Mr. Threet's Criminal History .......................................4

   III.Mr. Threet's Personal history and characteristics .......4

   IV.Mr. Threet's Current Health Issues................................5

   V. The Sentencing Hearing .................................................6

Summary of Argument ............................................................ 11

Argument................................................................................. 12

   I.  The district court's 120-month sentence is not substantively reasonable in light of the advisory sentencing guidelines range adequate accounting of both the seriousness of the offense and Mr. Threet's criminal history. ................................................ 12

      1.  Standard of Review ..................................................... 12

      2.  Discussion .................................................................. 12

Conclusion .............................................................................. 18

Request for Oral Argument..................................................... 20

Certificate of Compliance ....................................................... 21

Certificate of Service............................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Gall v. United States*, 552 U.S. 38 (2007) ..................................... 12, 13, 15

*Kimbrough v. United States*, 552 U.S. 85 (2007)...................................... 17

*Koon v. United States*, 518 U.S. 81 (1996)............................................. 15

*Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013)............................. 12

*Rita v. United States*, 551 U.S. 338 (2007)......................................... 12, 15

*United States v. Booker*, 543 U.S. 220 (2005)........................................... 12

*United States v. Mendoza–Mendoza*, 597 F.3d 212 (4th Cir. 2010) 12,13

**Statutes**

18 U.S.C. § 2113 ............................................................................. 1

18 U.S.C. § 3231 ............................................................................. 1

18 U.S.C. § 3553 .................................................................8, 10, 12, 15

28 U.S.C. § 1291 ............................................................................. 1

**Other Authorities**

U.S. Sentencing Comm'm, *2014 Sourcebook of Federal Sentencing Statistics*...................................................................................... 16

U.S. Sentencing Comm'm, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* ................................ 17

U.S.S.G. § 2B3.1 .............................................................................3

U.S.S.G. § 3E1.1 .............................................................................3

U.S.S.G. § 4A1.3 ........................................................................ 3, 7

## SUBJECT MATTER AND APPELLATE JURISDICTION

The district court had jurisdiction over this matter pursuant to 18 U.S.C. § 3231. Final judgment was entered on June 18, 2013. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. Appellant Threet noted a timely appeal in this case on February 27, 2015.

## ISSUE PRESENTED

Was a 120-month sentence, where the guideline range was 63 to 78 months' incarceration, substantively reasonable?

## STATEMENT OF THE CASE

On January 15, 2014, a grand jury sitting in the District of Maryland returned a one-count indictment charging Mr. Threet with Bank Robbery, in violation of 18 U.S.C. § 2113(a), (d), & (f). Joint Appendix (JA) at 6.

On November 12, 2014, Mr. Threet appeared before the Honorable Catherine C. Blake and entered a plea of guilty to the sole count of the indictment. JA at 7-31, 66–68. Mr. Threet's plea was entered pursuant to a written agreement with the government. JA at 32–39.

On February 20, 2015, Mr. Threet again appeared before the district court, this time for sentencing. JA at 40–48. That day, the district court imposed a 120-month sentence, followed by a period of supervised release. The district court issued its judgment a week later, on February 27, 2015. JA at 59–64. Mr. Threet noted a timely appeal later that day. JA at 65.

## STATEMENT OF FACTS

### I. The Guilty Plea

Mr. Threet's November 12, 2014, guilty plea was in accordance with a written plea letter. JA at 32–39. That letter included stipulations as to both the facts of the offense, as well as the applicable advisory sentencing guidelines.

The factual basis for the guilty plea read as follows:

> Arnold Threet, 49, is a resident of Baltimore Maryland. Threet was previously convicted of Bank Robbery in the United States District Court for the District of Maryland (L 98–059).
>
> At all times relevant, the First Mariner Bank, 9840 York Road, Cockeysville, Maryland, was insured by the Federal Deposit Insurance Corporation.
>
> On July 5, 2013, two males, one of whom is the Defendant, entered the First Mariner Bank, 9840 York Road, Cockeysville, Maryland. Both men were wearing masks and yelling for the people inside the bank to get down. One of the robbers grabbed a teller, pushed what appeared to be a firearm into her shoulder, and ordered her to the ground. Additionally, one of the robbers ordered another bank employee to walk from her desk to him and get down on the ground. He then ordered her to crawl back to her desk area. The robbers took approximately $8,935 from the bank by force, violence and intimidation.
>
> A witness observed the Defendant in a parking lot near the First Mariner Bank. He observed what appeared to be a black handgun in the waistband of the Defendant's pants. Police officers stopped

the Defendant's vehicle, and arrested the Defendant. A search of the vehicle revealed, among other things, clothing, gloves, and a pellet gun which are all depicted in the video of the bank robbery.

The Defendant admits that he committed this robbery, and either knew that the pellet gun would be used to commit the robbery or used the pellet gun during the robbery.

JA at 39.

As to the advisory sentencing guidelines, the parties entered into the following stipulation. First, they agreed the base offense level for the offense was 20. JA at 35, U.S.S.G. § 2B3.1(a). Next, the parties agreed that a total of 8 levels should be added to the base offense level as offense-specific enhancements based on the victim of the crime being a financial institution, the use of a dangerous weapon, and because a person was restrained in the commission of the offense. JA at 35, U.S.S.G. § 2B3.1(b)(1), (b)(2), & (b)(4)(B). Due to Mr. Threet's timely acceptance of responsibility, the plea called for a total reduction of 3 levels from the offense level. JA at 35, U.S.S.G. § 3E1.1. The final adjusted offense level was therefore 25. JA at 35.

The plea also permitted the government to argue that, pursuant to U.S.S.G. § 4A1.3, Mr. Threet's Criminal History Category underrepresented the seriousness of his criminal history and that the

3

district court should therefore depart upwardly to the career offender sentencing range. JA at 35–36.

## II. Mr. Threet's Criminal History

The Presentence Report (PSR) found that Mr. Threet had three criminal history points, which corresponds with a Criminal History Category of II. JA at 79. Those three points were based on a 1998 bank robbery conviction, also from the United States District Court for the District of Maryland, for which Mr. Threet received a sentence of 110 months' incarceration. JA at 78–79. The remaining convictions reported in the PSR did not receive criminal history points due to their age. They included a 1983 conviction for armed robbery; two theft convictions from 1985; an unlawful firearm possession conviction from 1987; drug possession convictions from 1987, 1988, 1992, and 1993; another theft and firearm conviction from 1988; and a second degree assault conviction from 1997. JA at 74–77.

## III. Mr. Threet's Personal history and characteristics

During the PSR interview, Mr. Threet stated the defining event of his early life was the death of his father in 1978, when Mr. Threet was just thirteen. JA at 81. He continued by adding that after his father's death he "messed up his life." JA at 81. His observation is corroborated by the long-term substance abuse detailed later in the PSR.

From the age of fourteen, the hallmark of Mr. Threet's life was a pattern of increasingly worsening substance abuse. He began drinking when he was fourteen. JA at 82. Over the years, his drinking escalated and by 2012, he was an alcoholic and was drinking daily. JA at 82. At fourteen, he also began to smoke marijuana. JA at 83. By age sixteen, he was smoking marijuana every day. JA at 83. From ages fifteen to seventeen, Mr. Threet was an occasional user of LSD. JA at 83. When he turned sixteen, he snorted powder cocaine for the first time and five years later he began to smoke crack. JA at 83. Mr. Threet first used heroin in 1983, when he was 18. JA at 83. By 1992, he was a regular user of heroin. JA at 83. He later stopped abusing heroin until having a stroke in 2012, at which point he became a regular heroin user again. JA at 83.

From the time he was released from his earlier 110-month sentence in 2006 until the aftereffects of his stroke rendered him unable to work, Mr. Threet maintained a regular employment for the first time in his life. JA at 83. Mr. Threet reported he was unable to work after his 2012 stroke. JA at 83.

## IV. Mr. Threet's Current Health Issues

Mr. Threet reported that he has been diagnosed with both high blood pressure and high cholesterol. JA at 82. He is currently taking medication for both issues. JA at 82. These conditions are likely linked to

the stroke he suffered in 2012. JA at 14. His doctors told him that he had an eighty percent chance of suffering another stroke based on his medical history. JA at 82. At the time of sentencing, Mr. Threet was taking six different prescription medications for his various ailments.

In terms of mental health, Mr. Threet reported being diagnosed with depression during his pretrial detention. JA at 82. Records from his pretrial detention facility stated he was actually diagnosed with anxiety and with issues related to difficulty with his adjustment to incarceration. JA at 82. Regardless of the specific diagnosis, he was under the care of a mental health professional during his pretrial detention up through sentencing.

## V. The Sentencing Hearing

At the February 20, 2015 sentencing hearing, the district court preliminarily adopted the PSR's guideline calculations. It therefore found an offense level of 25, a Criminal History Category of II, and a corresponding advisory sentencing guidelines range of 63–78 months' incarceration. JA at 42.

After making that finding, the sentencing court heard from the government regarding its motion for an upwards departure. The government argued that Mr. Threet's Criminal History Category understated the seriousness of his past record. Its primary contention was that the 110-month sentence Mr. Threet received in 1998 was so lengthy

"it caused every single of his other convictions to not count." JA at 43. Based on that, the government urged the district court to depart upwardly under U.S.S.G. § 4A1.3 to the career offender range, which would be based on an offense level 29 and a Criminal History Category VI. JA at 43. In essence, the government was asking the district court to treat Mr. Threet as a "*de facto* career offender." JA at 44.

The government's position was that a sentence between 151 and 188 months' incarceration was "appropriate in light of [Mr. Threet's] prior conviction; [and] it is also appropriate for sentencing." JA at 43. The government continued by arguing that Mr. Threet had a "significant criminal history" and that he was "engaging in conduct for which he received a very lengthy sentence in Federal Court." JA at 44. The government believed a sentence of at least 151 months' incarceration was proper because "as a general matter, people should be punished more when they continue to commit the same crime, not less." JA at 44.

As to the offense itself, the government noted that this case involved fewer robberies but, in its view "the conduct here is particularly egregious[.]" JA at 45. The government also noted that it could have charged a more serious offense, armed bank robbery, that would have yielded a higher career offender advisory sentencing guidelines range. JA at

46. It termed its charging decision in the case as a "potential break." JA at 46.

In conclusion, the government stated, "the defendant's criminal history significantly underrepresents his danger to the community and his risk of committing additional harm." JA at 47. In response, the district court noted "I understand you're asking for what you agreed to in the plea agreement, and that is separate from how I choose to apply my discretion in considering the factors under 3553(a)." JA at 47.

Mr. Threet's position was that there was no basis for the district court to depart to a higher Criminal History Category or to the career offender sentencing range. JA at 48–49. Specifically, the only other crime of violence in Mr. Threet's criminal history was the 1983 robbery. JA at 48. Noting that the 1983 robbery conviction was over thirty years old, the defense argued that even at the time of Mr. Threet's 1998 sentencing in his prior bank robbery case, that conviction did not receive criminal history points. JA at 48.

Mr. Threet's attorney then turned to the seven-year period, from 2006 to 2013, following the appellant's release from incarceration. JA at 49. During that time, Mr. Threet maintained a good work history until suffering a stroke in 2012. JA at 49. Unfortunately, his inability to work after his stroke left him unemployed and with many hours of the day to fill.

JA at 50 Mr. Threet began to abuse drugs again and soon thereafter committed the robbery at issue in this case in order to support his habit. JA at 50.

Finally, the defense argued that the government's motion for an upwards departure to the career offender sentencing range should be denied. Specifically, Mr. Threet argued:

> [B]ank robberies have been closely scrutinized for almost 30 years as far as with the Sentencing Guidelines. And the base offense level starts out at a very high level, and it is increased based on the harm that is caused by the defendant.
>
> So it is not a situation where it is just an *ad hoc* increase or an *ad hoc* decrease because of some policy or political decision, which is true with the drug guidelines and true with the career offender guidelines. This is based on what actually happened here and what the actual harm here is.
>
> \*       \*       \*
>
> And what the Sentencing Commission's own study shows is that the timing out of prior convictions is based on the empirical research that shows that offenses that are older than 15 years, depending on, you know, the type of felony that was committed, but for our cases, greater than 15 years from the time that the person's released are not predictors of recidivism. So the fact that they have timed out is appropriate because that's what the research shows. So even though he's here as a Criminal History Category II, that's because, as a 50-year-old man having committed this offense, that is an accurate predictor of what his true risks to the – to society is in the future.

JA at 51–52.

Having heard the arguments of counsel, the district court ruled it would not grant the government's motion for an upwards departure. JA at 55. The district court did, however, state, "On the other hand, I think this is a very serious offense, and Mr. Threet has a very serious criminal record. And I do not think that the current Advisory Guidelines themselves are sufficient to adequately account for a number of things which I'm about to discuss." JA at 55.

In addressing its findings pursuant to 18 U.S.C. § 3553(c), it first found that the offense in 1998 involved more banks, but the robberies were less violent. JA at 56. The court then credited Mr. Threet for his period of employment, but went on the find that "whatever the guidelines empirically may say about risk, it is obviously quite clear that, faced with the same very, very difficult circumstances in his personal life, he reverted to the same behavior, which is very dangerous behavior that he was in front of the Court for before." JA at 56. The district court's finding continued thus:

> This time I believe that he did not mean to hurt anybody, but obviously it creates a great risk. And it scares the teller that it's a gun, and they're not going to take the time or be able to figure out if this is a real gun or not. And it's very frightening and creates a great risk to the teller.
>
> So I'm also comparing Mr. Threet's situation to a number of other individuals, people that I've had

to sentence recently and will be sentencing in the
near future, this repeat robbery situation.

But I have to look at the fact that you've got a lot
of convictions and you went back to the same
behavior, only a little bit worse, when you did run
into problems. And so where that leaves me, sir –
and I am also taking into account your age in
terms of what's necessary, sufficient without being
greater than necessary[.]

JA at 56–57.

Based on those findings, the district court imposed a sentence of 120

months' incarceration. This appeal followed.

## SUMMARY OF ARGUMENT

The district court imposed a substantively unreasonable sentence

when it varied upwards to 120 months from an advisory sentencing

guidelines range of 63 to 78 months' incarceration. Its reasoning for the

sentence constituted an abuse of discretion because it penalized Mr. Threet

for factors already accounted for in the guideline calculation, disregarded

the empirical data behind the Sentencing Commission's calculation of

criminal history scores, and otherwise rested on reasoning that did not pay

adequate attention the mitigating factors in the case.

# ARGUMENT

**I. The district court's 120-month sentence is not substantively reasonable in light of the advisory sentencing guidelines range adequate accounting of both the seriousness of the offense and Mr. Threet's criminal history.**

### 1. <u>Standard of Review</u>

To determine whether a sentence is substantively reasonable, courts of appeal must examine the totality of the circumstances and ask whether the sentencing court abused its discretion in applying the factors in 18 U.S.C. § 3553(a). *See United States v. Mendoza–Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010); *Gall v. United States*, 552 U.S. 38, 51 (2007).

### 2. <u>Discussion</u>

The post-*Booker* federal sentencing scheme "aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013), *see United States v. Booker*, 543 U.S. 220 (2005). In describing the interplay between the guidelines and 18 U.S.C. § 3553(a), the Supreme Court has explained that, "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007).

12

Where a district court selects a sentence outside of the advisory sentencing guidelines range, it must state its reasons for imposing that sentence. *Gall*, 552 U.S. at 49–50. Further, "a major departure should be supported by a more significant justification than a minor one." *Mendoza-Mendoza*, 597 F.3d at 217 (quoting *Gall*, 552 U.S. at 50). The departure in this case was major.

While the Supreme Court rejected a "rigid mathematical formulation" as the standard for reasonableness review, *Gall*, 552 U.S. at 47–47, the arithmetic of Mr. Threet's sentence illustrates the magnitude of the district court's upwardly variant sentence in this case. The 120-month sentence that Mr. Threet is currently serving is nearly twice the low-end of the advisory sentencing guidelines range and is 42 months higher than the high-end of the range. The district court's justification must, per *Gall*, have reflected the extent of the departure. It did not.

The district court based its 120-month sentence in this case on a number of factors: (1) specific characteristics of this crime in comparison to Mr. Threet's prior bank robbery; (2) how the case compared to sentences imposed in similar cases; (3) Mr. Threet's prior, but unscored convictions; (4) his recidivism in this particular type of offense; and (5) Mr. Threet's age. JA 55–56. Taken together, these factors are not sufficient to support the major departure from the advisory sentencing guidelines range in this case.

The specific characteristics of the offense that troubled the district court were accounted in the guidelines calculation. The district court noted that his offense was more violent than the past offenses. The guideline calculation reflected this fact. A total of 6 levels were added to the offense level based on the presence of a dangerous weapon and because a bank employee was restrained during the robbery. JA at 73. These 6 levels raised the advisory sentencing guidelines range from 33–41 months' incarceration to the applicable range of 63–78 months'. In order words, the advisory sentencing guidelines range nearly doubled as a result of the offense-specific conduct the district court partly relied upon in varying upwards from the guidelines range.

The district court also made short shrift of a key difference between the 1998 case and the instant one: the number of robberies involved. The 1998 case involved four robberies over a two-month period. The factual stipulation in the case involved only one robbery. In this respect, the current case was less serious than the 1998 case.

Further, the district noted that "it scares the teller that it's a gun, and they're not going to take the time or be able to figure out if this is a real gun or not. And it's very frightening and creates a great risk to the teller." JA at 56. Here, the district court was referring to the use of a pellet gun in the commission of the robbery. In the 1998 case, however, three of

the four robberies involved a note that stated Mr. Threet, or one of his associates, had a gun. JA at 78–79. While the actual presence of a pellet gun and the restraint of an employee are serious, the 1998 robberies were also violent crimes. And, as noted above, the presence of the pellet gun and the restraint were addressed in the guideline calculation.

The district court also relied on how it sentences individuals in similar cases. Mr. Threet is not making a procedural reasonableness attack on his sentence. Nonetheless, the district court's comment that it was considering similar sentences in similar cases is not detailed or specific enough for this Court to rely upon. First, the robbery guideline, with the offense specific enhancements, combined with Mr. Threet's criminal history score yields a range of sentences based on the empirical research that supports the robbery guideline. *Gall*, 552 U.S. at 46 (citing *Rita*, 551 U.S. at 349).

Second, while § 3553(a)(6) states that a sentencing court must avoid "unwarranted sentence disparities," sentencing is at its heart "a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall*, 552 U.S. at 52 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). A sentencing court must, while being mindful of how it sentences similarly situated individuals, base its decision in each case on case-specific factors.

Finally, the unwarranted sentence disparity language applies to *all* similar cases, not just those pending before a particular judge. In Fiscal Year 2014, the mean sentence for a defendant convicted of robbery with a Criminal History Category of II was 49 months' incarceration. U.S. Sentencing Comm'm, *2014 Sourcebook of Federal Sentencing Statistics* Table 14 (2014).[1] The median sentence was 41 months' incarceration. *Id.* Even for those defendants whose Criminal History Category was VI but were not career offenders the mean sentence for robbery was 86 months' incarceration and the median sentence was 77 months' incarceration. *Id.* Thus, even if the district court had opted to not sentence Mr. Threet as a career offender, but had reached back in time to increase Mr. Threet's Criminal History Category, the sentence in this case was still well above the national averages for robbery cases.

The next factor relied upon by the district court, Mr. Threet's earlier, unscored convictions, is similarly addressed by the argument above. Additionally, the criminal history scoring rules have been shown to be meaningful predictors of future recidivism. A 2004 study by the U.S. Sentencing Commission found that the single most reliable predictor of recidivism, when looking at criminal history, was the number of criminal

---

[1] Available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2014/Table14.pdf

history points an individual had at sentencing. U.S. Sentencing Comm'm, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* 7, 10–11 (2004).[2] Thus, while a district court is free to disagree with a guideline on policy grounds, *see Kimbrough v. United States*, 552 U.S. 85 (2007), this Court should consider the district court's disregarding of the body of empirical data in support of the guideline's approach in this area in considering whether the 120-month sentence in this case was unreasonable. JA at 52.

The next fact the district court relied upon for its sentence was Mr. Threet's recidivism in the same type of offense. While the government's argument that "as a general matter, people should be punished more when they continue to commit the same crime, not less[,]" JA at 44, makes a degree of intuitive sense, there is no underlying logic to the argument or the district court's reliance upon it. Simply ratcheting up a sentence so that it is longer than an earlier sentence is not a rational or reasonable approach to sentencing.

Finally, the district court mentioned Mr. Threet's age in its findings. This factor weighed in Mr. Threet's favor. The district court, however, did not give it sufficient weight in setting the sentence. Likewise, the district

---

[2] Available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf

court did not properly credit much of the mitigation presented by defense counsel. The district court almost wholly discounted Mr. Threet's years of living a crime-free and sober life. The time span of 2006 to 2012 was the longest time Mr. Threet was living in the community as a productive citizen since he turned 18. JA at 74–81. There was a clear link between Mr. Threet's long-term drug abuse and the conduct in this case that the district court did not properly credit. JA at 49-50. The district court did not, as it should have, consider whether its recommendation for a drug treatment program within the Bureau of Prisons would reduce the likelihood that Mr. Threet would commit a future crime of this nature.

The advisory sentencing guidelines range in this case established a harsh penalty for a serious offense. It took into account offense-specific aggravating factors and Mr. Threet's risk of recidivism based on the age of his prior convictions. The district court, by departing substantially from that range, relied on factors that were adequately addressed by the sentencing guidelines, contrary to the body of empirical research behind the guidelines, and it also discounted the mitigating factors in the case. The result was a sentence that is substantively unreasonable.

## CONCLUSION

The district court abused its discretion in sentencing Mr. Threet to 120 months' incarceration. As detailed above, the sentence it imposed is

unreasonable. Mr. Threet respectfully asks this Court to vacate his

sentence and remand the case to the district court for resentencing.

Respectfully submitted,

_____
Andrew R. Szekely
The Law Offices
of Andrew R. Szekely, LLC
7474 Greenway Center Drive
Suite 150
Greenbelt, MD 20770
301-358-1048

## REQUEST FOR ORAL ARGUMENT

Counsel for Appellant respectfully requests oral argument in this case so that the court can more fully consider the important issues raised by this appeal.

## CERTIFICATE OF COMPLIANCE

This brief has been prepared in 14-point Bell MT font. Exclusive of the cover page, table of contents, table of authorities, requests for oral argument, and certificates of compliance and service this brief contains 4,179 words.

_____/s/_____

Andrew R. Szekely

## CERTIFICATE OF SERVICE

In accordance with Rule 25 of the Rules of the United States Court of Appeals for the Fourth Circuit, I hereby certify that I have this July 1, 2015, filed the required copies of the foregoing Brief of Appellant in the Office of the Clerk of the Court, via hand delivery and have electronically filed the Brief of Appellant using the Court's CM/ECF system which will send notification of such filing to the following counsel:

Bonnie S. Greenberg, Assistant U. S. Attorney
OFFICE OF THE UNITED STATES ATTORNEY
4th Floor
36 South Charles Street
Baltimore, MD 21201-0000
Direct: 410-209-4890
Email: Bonnie.Greenberg@usdoj.gov


_____/s/_____

Andrew R. Szekely